## WILLIAM B. BAYLOR v. THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY.

There is no legal obligation on the part of a railroad company to build its bridges over public roads with an elevation so great that one of its employés standing upright on the top of a car will not be endangered, and consequently, if an employé while thus standing in the course of his business, be struck by one of such bridges, he cannot recover for such injury.

On rule to show cause.

The plaintiff was employed as a brakeman by the defendant. Being on the top of one of the cars while the train was in motion, and while standing nearly upright, he was struck by a bridge under which the train was passing. He was at the time passing from one car to the other for the purpose of detaching some of the cars that were to be left upon a siding, by an operation called a "flying switch." This accident occurred in the afternoon, while it was still light.

For the injury thus occasioned this suit was brought; the verdict was for the plaintiff, and this was a rule to show cause, &c.

Argued at November Term, 1877, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

For the rule, *J. Vanatta.*

For the plaintiff, *Gilbert Collins.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   I think the plaintiff should have been non-suited.   He was, according to his own showing, an employé of the defendant, injured by one of the dangers of the business in which he voluntarily engaged.   There was no evidence to show, nor was there pretence, that it was customary for railroad companies to build the bridges spanning the public roads with an elevation sufficient to admit of a man to pass under who is standing upright on the top of a car.   Such is not the practice of this company, nor of any other, so far as appears.   Such structures would often be inconvenient, and sometimes, perhaps, impracticable.   It is, therefore, quite plain that the defendant did not owe any duty to this plaintiff not to subject him to the danger into which he fell.   This being so, it is also plain that the plaintiff is chargeable, from the mere fact of his entering upon this employment, with a knowledge that this danger existed.   Of what, then, can he complain, and what has the defendant done that can in any sense, either legal or moral, be called wrongful?   It was said that the defendant was bound to apprise the plaintiff, when he entered into this employment, that the bridges along the line of this road were dangerous under certain conditions.   It seems to me that it might as well be insisted on, that the plaintiff ought to have been notified that the usual rate of speed with which the cars ran on the road was a hazard: for the bridges were as usual and obvious a source of risk as was the celerity of the trains.   Besides, it appeared in the case that the plaintiff had passed this bridge in daylight on previous occasions.

Nor does there seem any weight in the suggestion that the

plaintiff was called upon suddenly to take part in the operation of switching off these cars at the time in question. There was nothing unusual in this act; it was part of the ordinary duty of the brakeman to perform it. As to the pretext that the call upon the plaintiff to perform this service was sudden, and that he was thrown off his guard, it is certainly a conclusive answer to say that it was a part of his bargain when he undertook this business, that he subjected himself to the risk of such emergencies. He did not stipulate that there should be no exigencies or unexpected demands upon him for services, and in the ordinary course of things he was liable to be placed in these situations that were full of danger to a heedless person.

I have read the testimony with attention, and it has fully satisfied me that the injury of which the plaintiff complains is the product, purely, in a legal sense, of his own carelessness.

Let the rule be made absolute.